1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN DANIEL BARAJAS ALVAREZ, | Case No. 1:21-cv-00601- EPG |
| Plaintiff, | FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 1, 17). |
| Defendant. | |

12

13

14

15

16

17

18

19    This matter is before the Court on Plaintiff's complaint for judicial review of an

20 unfavorable decision by the Commissioner of the Social Security Administration regarding his

21 cessation of Supplemental Security Income benefits after turning 18 years old. The parties have

22 consented to entry of final judgment by the United States Magistrate Judge under the provisions

23 of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No.

24 10).

25    Plaintiff presents the following issues: (1) "The ALJ's MRFC [or, mental residual

26 functional capacity,] is not supported by Substantial Evidence"; and, (2) "The ALJ harmfully

27 erred by failing to provide 'clear and convincing' reasons for rejecting symptomology evidence."

28 (ECF No. 17, p. 2).

1

1    Having reviewed the record, administrative transcript, the briefs of the parties, and the

2    applicable law, the Court finds as follows:

3    **I.    ANALYSIS**

4        **A.    MRFC**

5    Plaintiff argues that the ALJ's MRFC assessment is unsupported by substantial evidence

6    because the ALJ failed to account for certain limitations assessed by psychological consultative

7    examiner Dr. Portnoff despite finding Dr. Portnoff's opinions "somewhat persuasive." (ECF No.

8    17, pp. 7-11). Specifically, Plaintiff argues that:

9        [T]he ALJ failed to account for Dr. Portnoff's determination that Mr. Barajas. . . is
    mildly to moderately impaired in his ability to work on a consistent basis without

10       special or additional instruction; and is moderately impaired in his ability to
    complete a normal workday or workweek without interruptions from a psychiatric

11       condition. (AR 529-530).

12   (ECF No. 17, p. 7-8).[1]

13   A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20

14   C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2,

15   § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the

16   capacity for sustained performance of the physical-mental requirements of jobs"). "In

17   determining a claimant's RFC, an ALJ must consider all relevant evidence in the record,

18   including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain,

19   that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec.*

20   *Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted); *see*;

21   *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was

22   "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports);

23   *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-1042 (9th Cir. 2008) ("[T]he ALJ is the final arbiter

24   with respect to resolving ambiguities in the medical evidence."); *Smith v. Saul*, No. 1:18-CV-

25   01614-GSA, 2020 WL 2611680, at \*5 (E.D. Cal. May 22, 2020) (rejecting "the residual

26   ───────────────────

27   [1] Plaintiff also argues that the ALJ failed to account for Dr. Portnoff's assessment that Plaintiff could not
manage his own funds. (ECF No. 17, p. 7-8). However, Plaintiff fails to explain how his inability to

28   manage his funds relates to the ALJ's MRFC assessment, *e.g.*, Plaintiff does not argue that his inability to
manage his funds warrants a specific work-related restriction that was not included in the MRFC.

1   functional capacity determination for lack of compliance with applicable law and insufficient

2   support from the record as a whole").

3       In reviewing findings of fact with respect to such determinations, this Court determines

4   whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g).

5   Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389,

6   402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10

7   (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to

8   support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted).

9       The ALJ determined that, since January 1, 2018, Plaintiff had the following RFC:

10      [Plaintiff could] perform a full range of work at all exertional levels but with the
        following nonexertional limitations: the claimant is limited to simple, routine,
11      repetitive work tasks; no production rate or constant motion job tasks; no
        interaction with the general public, and only occasional interaction with coworkers
12      and supervisors, with no tandem job tasks; and with few, if any changes in work
13      tasks or setting.

14  (A.R. 33-34).

15      In formulating the MRFC, the ALJ addressed Dr. Portnoff's opinion as follows:

16      The undersigned finds the opinions of the psychological consultative examiner Dr.
        Portnoff somewhat persuasive. Dr. Portnoff opined that the claimant was able to
17      perform simple and repetitive tasks; but had moderate limitations in his ability to
        complete a normal workday or workweek without interruptions from a psychiatric
18      condition; mild-to-moderate limitations in his ability to perform detailed and
        complex tasks and work on a consistent basis without special or additional
19      instructions; and mild limitations in his ability to accept instructions from
        supervisors, interact with coworkers and the public, or deal with the stress
20      encountered in a competitive work environment (Ex. 5F, pp. 7-8). As a
        psychological consultative examiner, Dr. Portnoff is an expert in the field of
21      psychology and familiar with the definition of disability and evidentiary standards
        utilized by the Social Security Administration. These opinions generally are
22      supported by the results of Dr. Portnoff's examination of the claimant including
        normal immediate, recent, and remote memory and normal concentration and
23      attention on mental status exam (Ex. 5F, pp. 2-3). While the claimant's scores on
        the WAIS-IV and WMS-IV at first glance appear to be indicative of greater
24      cognitive limitations, the undersigned accepts Dr. Portnoff's explanation that these
        tests when considered in connection with the claimant's reported abilities, are
25      more consistent with borderline intellectual functioning (Ex. 2F, pp. 3-7).
        Additionally, Dr. Portnoff's opinions are consistent with the claimant's reports of
26      graduating high school with good grades, attending college, and driving an

27

28

3

automobile (Ex. 2F, p. 3; 12E, pp. 4-5).

(A.R. 37).

True, as Plaintiff points out, courts have concluded that an ALJ errs by accepting a doctor's opined limitations but then does not account for them in the RFC. (*See* ECF No. 17, pp. 7-9) (citing, among other cases, *Anderson v. Berryhill*, No. ED CV 17-1063-E, 2018 WL 555454, at *2 (C.D. Cal. Jan. 23, 2018)) ("Thus, if (as it appears) the ALJ accepted Dr. Tilton's opinion regarding a limitation on Plaintiff's ability to perform work activities without special or additional supervision, then the ALJ erred by failing without explanation to account for this limitation in the residual functional capacity assessment . . . ."). And courts have concluded that a RFC limiting a Plaintiff to simple, routine, repetitive work tasks—like the RFC did here—fails to account for some of the moderate limitations that Dr. Portnoff assessed. (ECF No. 17, pp. 9-11) (citing, among other cases, *Macias v. Saul*, No. 1:19-CV-01187-BAM, 2021 WL 856423, at *6 (E.D. Cal. Mar. 8, 2021)) (collecting cases noting that limitation to simple tasks does not account for moderate limitations, such as working on a consistent basis without special or additional instruction and completing a normal workday or workweek without interruptions from a psychiatric condition).

Here, the ALJ found Dr. Portnoff's opinions to be only "somewhat persuasive." While the ALJ did not detail which opined limitations were "somewhat persuasive" and which were not—a fact Plaintiff criticizes—the ALJ was not required to "perform a 'function-by-function analysis,' nor address each work-related restriction identified in the record 'so long as the RFC is otherwise supported by substantial evidence.'" *Harrell*, 2021 WL 4429416, at *4 (quoting *Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 313 (W.D.N.Y. 2013)). Here, the ALJ relied on separate medical opinions, deemed more persuasive than Dr. Portnoff's opinions, to support the MRFC.

Most notably, as Defendant points out, the ALJ relied on the opinions of a State Agency non-examining psychological consultant, Dr. Franco. (ECF No. 18, p. 8).

> The opinions of State agency non-examining psychological consultant Anna M. Franco, Psy.D. are persuasive. Dr. Franco opined that the claimant had moderate limitations in the areas of concentrating, persisting, or maintaining pace and understanding, remembering, or applying information; and mild limitations in the areas of interact with others and adapting or managing oneself. She further opined

4

> that the claimant could perform simple repetitive work; sustain concentration, persistence, and pace for the usual day with the customary breaks; and could interact and adapt without difficulties (Ex. 2A). As a State agency psychological consultant, Dr. Franco is an expert in the field of psychology and familiar with the definition of disability and evidentiary standards utilized by the Social Security Administration. Her opinions are well supported by her cogent analysis and consistent with the medical evidence of record available for her review. Like Dr. Portnoff, Dr. Franco noted that the claimant's FSIQ on WAIS-IV testing was likely deflated considering his presentation in his IEP documents and his teacher questionnaire (Ex. 6E, p. 5; 8E; 9E, pp. 17-24; 14E, p. 11, 25; 15F, pp. 2-7).

(A.R. 37).

As opposed to the "somewhat persuasive" designation given to Dr. Portnoff's opinion, Dr. Franco's was considered "persuasive." Notably, Dr. Franco opined that Plaintiff was "[n]ot significantly limited" in his "ability to sustain an ordinary routine without special supervision." (A.R. 93, 530). Moreover, as the ALJ pointed out, Dr. Franco ultimately concluded, after identifying some moderate mental limitations, that Plaintiff could complete simple repetitive work; sustain concentration, persistence and pace for the usual day with customary breaks; and interact and adapt without difficulties. (A.R. 37, 93).

Similarly, the ALJ also relied on the opinion of another State Agency non-examining psychological consultant, Dr. Khan.

> The opinions of State agency non-examining psychiatric consultant S. Khan, M.D. are also persuasive. Dr. Khan opined that the claimant had moderate limitations in the areas of concentrating, persisting, or maintaining pace and understanding, remembering, or applying information; and mild limitations in the areas of interact with others and adapting or managing oneself. Dr. Khan further opined that the claimant could perform simple repetitive work; sustain concentration, persistence, and pace for the usual day with the customary breaks; and could interact and adapt without difficulties (Ex.7F). Dr. Khan also opined that the claimant's ability to understand, remember, and carry out detailed instructions was moderately limited; as was his ability to maintain attention and concentration for extended periods (Ex. 6F) As a State agency psychological consultant, Dr. Khan is an expert in the field of psychology and familiar with the definition of disability and evidentiary standards utilized by the Social Security Administration. Dr. Khan's opinions are well supported by the provided analysis (Ex. 8F) and consistent with the medical evidence of record available for review (Ex. 6E, p. 5; 8E; 9E, pp. 17-24; 14E, p. 11, 25; 15F, pp. 2-7).

(A.R. 37-38).

Like with Dr. Franco, the opinion of Dr. Khan was deemed "persuasive," rather than

5

"somewhat persuasive." And Dr. Khan, like Dr. Franco, ultimately concluded that Plaintiff was "[n]ot significantly limited" in his "ability to sustain an ordinary routine without special supervision" and could complete simple repetitive work; sustain concentration, persistence and pace for the usual day with customary breaks; and interact and adapt without difficulties despite having some moderate mental limitations. (A.R. 532-34).

Lastly, the ALJ relied on non-medical opinion evidence in formulating the MRFC. For example, the ALJ noted that Plaintiff's good grades in high school, enrollment in college, and ability to drive a vehicle helped inform the MRFC assessment. (A.R. 36-38); *see also* (A.R. 38 – finding opinion of disability hearing officer (A.R. 123-31) persuasive, who opined that Plaintiff retained the concentration, persistence, and pace to sustain simple one to two-step tasks).

In short, the ALJ considered a variety of record evidence, including the "persuasive" opinions of other doctors who did not believe Plaintiff to be significantly limited in his ability to sustain an ordinary work routine without special supervision. Accordingly, the Court concludes that the MRFC assessment is supported by substantial evidence.[2]

### B.      Plaintiff's Subjective Testimony

Plaintiff next argues that the ALJ impermissibly rejected his subjective symptom testimony. (ECF No. 17, p. 11). The Ninth Circuit has provided the following guidance regarding a plaintiff's subjective complaints:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ

---

[2] The Court notes that Plaintiff also argues that Dr. Portnoff's opined limitations were supported by other record evidence, *e.g.*, Plaintiff's education records and testimony, some of which are discussed in the next section. (*See* ECF No. 17, p. 8). However, while such records might rationally support a more restricted MRFC, in cases where "the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

must identify what testimony is not credible and what evidence undermines the
claimant's complaints.

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Additionally, an

ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the

record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

Here, the ALJ concluded that Plaintiff's "medically determinable impairments could

reasonably be expected to cause the alleged symptoms." (A.R. 34). Accordingly, because there is

no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's

decision for clear and convincing reasons, supported by substantial evidence, for not giving full

weight to Plaintiff's symptom testimony.

The ALJ summarized Plaintiff's testimony and the reasons for discounting it as follows:

> At his hearing, the claimant testified that he received special education support
> when he was in high school. He further testified that he graduated high school with
> a diploma, and is currently attending college at the College of the Sequoias. He
> reported he receives accommodations with his college learning, receives additional
> testing time, special notetaking paper, and the ability to take tests in a separate,
> quiet area (Hrg. Testimony). He reported that his grades were "pretty good" with a
> 2.4 grade point average (GPA) (Hrg. Testimony). The claimant's aunt Georgina
> Alvarez reported that the claimant cannot follow[] either written or oral
> instructions without requiring repetition (Ex. 12E, p. 6). She also reported that the
> claimant cannot maintain his attention or concentration for longer than 15 minutes
> at a time (Ex. 12E, p. 6). Cesar Barajas, the claimant's relative, reported that the
> claimant has a difficult time learning and comprehending material (Ex. 19E, p. 1).
>
> . . . .
>
> The claimant's educational records show that with his academic supports, the
> claimant earned good grades, with "A"s in the majority of his classes (Ex. 6E, p. 5;
> 8E; 9E, pp. 17-24; *see also* Ex. 7B, p. 2). His teachers noted that the claimant was
> "polite and respectful," worked hard in school and was "doing great" in all his
> classes (Ex. 9E, p. 15; 14E, p. 11, 25). The claimant's teacher Robert Aquilar
> noted on October 2, 2017, that the claimant had no difficulties in the areas of
> acquiring and using information, attending or completing tasks, interacting and
> relating with others, moving about or manipulating objects, or caring for himself
> (Ex. 15E, pp. 2-7). Mr. Aquilar identified the claimant's instructional reading
> grade level as 3.9 and his written language grade level as 6 (Ex. 15E, p. 1);
> however, the claimant's performance on the California English Language
> Development Test (CELDT) in 2016-2017 ranges from early intermediate
> performance in reading to advanced performance in listening, with an overall score
> falling in the intermediate range (Ex. 16E, p. 1). The claimant enrolled in and
> began attending classes at the College of the Sequoias in the fall semester 2018.

He received some accommodations as part of his attendance (Ex. 22E, p. 1). He testified that he received good grades with a 2.4 GPA.

The claimant's own subjective reports of symptom intensity, persistence, and limiting effects do not support his allegations of ongoing disabling limitations. The claimant is independent in his personal hygiene and dressing (Ex. 12E, p. 2). The claimant is able to complete his chores including feeding the family dogs, picking up trash outside, and doing yardwork (Ex. 12E, pp. 2- 4). He can prepare a simple meal for himself (Ex. 5F, p. 2). Despite his alleged intellectual disorder and cognitive limitations, the claimant earned his driver's license and drives regularly (Ex. 7B, p. 4; 12E, p. 4). He enjoys listening to music, playing video games, playing with friends, playing guitar, and playing soccer (Ex. 2F, p. 3; 12E, p. 5). Playing video games, playing the guitar, and playing soccer are all activities that require significant attention to detail, concentration, persistence, and diligent repetition and practice in order to improve one's performance to advance in the pursuit. While in school, he also worked in the student store (Ex. 7B, p. 2).

(A.R. 34, 36).

Upon review of the ALJ's decision, the Court concludes that the ALJ's credibility determination was supported "with findings sufficiently specific to permit the [C]ourt to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958. Notably, as the ALJ pointed out, Plaintiff was able to perform sufficiently academically, albeit with accommodations, and to engage in activities, like driving a vehicle, that refuted Plaintiff's claims of totally disability symptoms. *See Freeman v. Berryhill*, 724 F. App'x 624, 625 (9th Cir. 2018) (unpublished) (concluding that an ALJ properly discredited a claimant's "testimony based on her activities, reasonably concluding that even with several accommodations, her ability to maintain a high grade point average in college classes and drive a long distance to campus was inconsistent with the degree of limitations she alleged in her testimony").

While Plaintiff argues that the ALJ overstated Plaintiff's abilities, none of Plaintiff's criticisms reveals any material error by the ALJ. (ECF No. 17, p. 13). For example, Plaintiff argues that the ALJ wrongly concluded that Plaintiff was independent in his personal care when the cited supporting record—a third party function report from Plaintiff's Aunt's—simply listed "N/A" when asked about Plaintiff's personal care.  (A.R. 36, 367). However, any ambiguity created by this record does not materially undermine the ALJ's conclusion, as the Plaintiff himself testified at the hearing he can manage his personal care. (A.R. 62 – Question: "And then,

1   in terms of your -- your ability to --take care of your own personal needs -- for example – to cook

2   for yourself, to be able to -- apart from washing your clothes -- but being able to bathe yourself

3   without reminders. Can you do those things or do you need somebody to prompt you?" Answer:

4   "I think I can manage.").

5          Likewise, Plaintiff challenges the ALJ's conclusion that Plaintiff "can prepare a simple

6   meal for himself" by noting that the cited supporting record—Dr. Portnoff's report—states that

7   Plaintiff "can prepare basic food for himself." (A.R. 36, 524). In an attempt to draw a distinction

8   between these statements, Plaintiff says this does not mean that "he cooks on any regular basis

9   [or] makes anything the least bit complex." (ECF No. 17, p. 13). However, the ALJ never said as

10  much. (*See* A.R. 62-63 (Plaintiff's testimony that he can cook but had not cooked for

11  approximately six months)). Rather, the observation that the ALJ did make—that Plaintiff had the

12  ability to prepare simple meals—generally supports the ALJ's conclusion.

13         Lastly, Plaintiff faults the ALJ for failing to discuss his testimony about not keeping a job

14  at a packing company. (A.R. 17, p. 16). However, review of the relevant testimony indicates that

15  Plaintiff worked packing cherries for approximately a week but stopped working after his

16  employer told him that he "wasn't really doing the job right," indicating that he was putting some

17  boxes in the wrong area. (ECF No. 59). Without more knowledge about how Plaintiff's

18  limitations might have played a role in his failure to continue working for the packing company,

19  the Court cannot conclude that this testimony was so significant and probative that the ALJ erred

20  by failing to specifically address it.

21         Thus, after considering the reasons given and the record as a whole, the Court finds that

22  the ALJ provided legally sufficient reasons to discount Plaintiff's subjective symptom testimony.

23  \\\

24  \\\

25  \\\

26  \\\

27  \\\

28  \\\

## II.      CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. And the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:    **June 29, 2022**                    /s/ *Erica P. Grosjean*
                                                    UNITED STATES MAGISTRATE JUDGE

10